**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JERICHO DEMISSIE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3-09-cv-1153-M** |
| | § | |
| **7- ELEVEN, INC., DARCIA ADAMS** | § | |
| **YONAS G. SELASSIE** | § | |
| | § | |
| **Defendants.** | § | |

**BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Eric A. Welter
State Bar No. 24054612
eaw@welterlaw.com
Michael Wilson Stoker
*Pro Hac Vice*
Virginia Bar No. 71566
mws@welterlaw.com
**WELTER LAW FIRM, P.C.**
720 Lynn Street, Suite B
Herndon, Virginia 20170
(703) 435-8809
(703) 435-8851 (Telecopier)

**COUNSEL FOR DEFENDANTS**
**7-ELEVEN, INC., DARCIA ADAMS**
**AND YONAS SELASSIE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iv

BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ............. 1

SUMMARY ........................................................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................... 1

    I.    Plaintiff's Employment With 7-Eleven ................................................ 1

    II.    7-Eleven's Payroll System And Policies Regarding Clocking In & Out ............... 3

    III.    Plaintiff's February 2007 Discussions With Management ..................................... 4

    IV.    Plaintiff's Alleged Defamatory Statements .......................................................... 13

LEGAL ARGUMENT ......................................................................................... 13

    I.    The Applicable Legal Standard For Summary Judgment ..................................... 13

    II.    Plaintiff Cannot Establish Her Claim For Breach of Contract ............................ 14

    III.    Plaintiff Cannot Establish Her Claim For FLSA Retaliation .............................. 15

        A.    FLSA Retaliation "But For" Standard ...................................................... 15

        B.    Plaintiff Cannot Establish A Prima Facie Case ........................................ 16

            a.    Plaintiff Did Not Engage In A Protected Activity .............................. 16

            b.    Plaintiff Did Not Suffer An Adverse Action ...................................... 17

            c.    No Causal Connection Has Been Established ..................................... 18

        C.    Plaintiff's Separation Was Not "But For" A Protected Activity ............. 19

    IV.    Plaintiff Cannot Establish Her Claim For Fraudulent Misrepresentation ........... 20

    V.    Plaintiff Cannot Establish Her Claim For Conspiracy ........................................ 21

    VI.    Plaintiff Cannot Establish Her Claim For Defamation ........................................ 21

    VII.    Plaintiff Cannot Establish Her Claim For Negligent Supervision & Retention .. 23

VIII.   Plaintiff Cannot Establish Her Claim For Negligent Infliction Of Emotional
        Distress.............................................................................................................. 24

CONCLUSION ........................................................................................................................ 25

## **TABLE OF AUTHORITIES**

### Cases

*5-State Helicopters, Inc. v. Cox*, 46 S.W.3d 254 (Tex.App. 2004) ............................................. 22

*Alizadeh v. Safety Stores, Inc.*, 802 F.2d 111 (5th Cir. 1986)...................................................... 14

*Allsup's Convenience Stores, Inc. v. Warren*, 934 S.W.2d 433 (Tex. App.-Amarillo 1996) ...... 23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).......................................................... 13, 14

*Binur v. Jacobo*, 135 S.W.3d 646 (Tex. 2004) ............................................................................. 20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................................... 13, 14

*Chandler v. La Quinta Inns, Inc.*, 264 Fed.Appx. 422 (5th Cir. 2008) ........................................ 17

*Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc.*,
    698 F.Supp.2d 730 (S.D.Tex. 2010) ........................................................................................ 22

*Crow v. Rockett Special Utility Dist.*, 17 S.W.3d 320 (Tex.App.-Waco 2000).......................... 20

*Dangerfield v. Ormsby*, 264 S.W.3d 904 (Tex.App.-Fort Worth 2008)....................................... 23

*Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308 (5th Cir. 1995) ........................................... 22

*Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788 (Tex. 2006) .......................................................... 23

*Fojtik v. First Nat'l Bank of Beeville*, 752 S.W.2d 669 (Tex. App. 1988).................................. 21

*Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*,
    960 S.W.2d 41 (Tex. 1998)....................................................................................................... 21

*Fowler v. Capital Cities/ABC, Inc.*, 2002 WL 31230802 (N.D.Tex. 2002) ................................ 22

*Frazin v. Hanley*, 130 S.W.3d 373 (Tex. App. 2004) .................................................................. 14

*Friend v. CB Richard Ellis, Inc.*, 2009 WL 417300 (Tex. App. 2009)........................................ 14

*Garcia v. Allen*, 28 S.W.3d 587 (Tex. App. 2000) ...................................................................... 24

*Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002) ............................................................................. 19

*Gonzales v. Willis*, 995 S.W.2d 729 (Tex. App. 1999) ............................................................... 24

*Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523 (Tex. 1990) ..................................... 23

*Green v. CBS*, 286 F.3d 281 (5th Cir. 2002) ............................................................................... 22

iv

Greenberg Traurig of New York, P.C. v. Moody, 161 S.W.3d 56 (Tex. App. 2004) .................. 21

GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605 (Tex. 1999)....................................................... 24

Hagan v. Echostar Satellite, LLC, 529 F.3d 617 (5th Cir. 2008) ........................................... 15, 16

Hargay v. City of Hallandale, 57 F.3d 1560 (11th Cir. 1995) ...................................................... 17

James v. Brown, 637 S.W.2d 914 (Tex. 1982) ............................................................................. 21

Kanida v. Gulf Coast Medical Personnel LP, 363 F.3d 568 (5th Cir. 2004)......................... 15, 19

Krim v. BancTexas Group, Inc., 989 F.2d 1435 (5th Cir. 1993) .................................................. 13

Leach v. Conoco, Inc., 892 S.W.2d 954 (Tex.App.-Houston [1st Dist.] 1995)............................ 20

Leahy v. Anderson Crenshaw & Associates, LLC., 2010 WL 1459197 (N.D.Tex. 2010) .......... 19

Leps v. Farmers Ins. Exchange, 2010 WL 2470995 (N.D.Tex. 2010) ......................................... 16

Little v. Liquid Corp., 37 F.3d 1069 (5th Cir. 1994) ................................................................... 13

Midland Judicial Dist. Cmty. Supervision & Corr. Dep't v. Jones,
   92 S.W.3d 486 (Tex. 2002)....................................................................................................... 14

Misch v. Exxon Corp., 979 S.W.2d 700 (Tex. App. 1998) .......................................................... 15

Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501 (Tex. 1998).................................. 15

Morris v. JTM Materials, Inc., 78 S.W.3d 28 (Tex.App.-Fort Worth 2002).............................. 23

Ogg v. Dillard's Inc., 239 S.W.3d 409 (Tex. App.-Dallas 2007).................................................. 23

Pioneer Concrete of Texas, Inc. v. Allen, 858 S.W.2d 47 (Tex.App. 1993) ............................... 22

Rios v. Rossotti, 252 F.3d 375 (5th Cir. 2001)............................................................................. 19

Roberson v. Allel Info. Servs., 373 F.3d 656 (5th Cir. 2004)...................................................... 18

Seaman v. CSPH, Inc., 179 F.3d 297 (5th Cir. 1999)................................................................... 19

Standard Fruit & Vegetable Co. v. Johnson, 985 S.W.2d 62 (Tex. 1998)............................. 24, 25

Strickland v. Aaron Rents, Inc., 2006 WL 770578 (W.D.Tex. 2006) .......................................... 22

Strong v. University Healthcare System, L.L.C., 482 F.3d 802 (5th Cir. 2007) ..........................20

Texas First Nat'l Bank v. Ng, 167 S.W.3d 842 (Tex. App. 2005) ............................................... 20

Verinakis v. Med. Profiles, Inc., 987 S.W.2d 90 (Tex.App.-Houston [14th Dist.] 1998) ............ 24

Zarzana v. Ashley, 218 S.W.3d 152 (Tex. App. 2007) .................................................................. 23

## **Statutes**

Federal Rules of Civil Procedure Rule 56 .................................................................................. 15

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendants 7-Eleven, Inc. ("7-Eleven"), Darcia Adams and Yonas Selassie have moved this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment in their favor on Plaintiff's Third Amended Petition.  The grounds for 7-Eleven's motion are set forth in this Brief in Support.

## INTRODUCTION

After working for 7-Eleven as a part-time Sales Associate for six months, Plaintiff simply refused to continue working at her store or with her supervisor, Defendant Yonas Selassie.  In response, Plaintiff was given the opportunity to find another store where she was willing to work.  Plaintiff chose not to find a store that satisfied her or to communicate with 7-Eleven regarding her future intentions.  Plaintiff's employment was therefore voluntarily separated on the belief that Plaintiff had no intention of returning to work with 7-Eleven.

Plaintiff has brought seven causes of action against Defendants, none of which are applicable to her employment relationship with 7-Eleven.  Plaintiff has not advanced any evidence that Defendants engaged in any actionable misconduct.  Because 7-Eleven is entitled to judgment as a matter of law, the Court should grant the instant motion and dismiss the Third Amended Petition with prejudice.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**I.**     **Plaintiff's Employment With 7-Eleven.**

Plaintiff was hired by 7-Eleven as a Sales Associate in June 2006.  (*App*. 37*;* Third Amended Petition ("TAP") ¶1).  Plaintiff was a part-time employee at Store No. 32804 located in Rowlett, Texas.  (*App*. 24; TAP ¶5).  Plaintiff worked between 24 and 30 hours a week with 7-Eleven on varying shifts.  (*App*. 37-38).  Plaintiff claims she was hired as a full-time employee,

but her application states that she was applying for a part-time position.  (*App.* 36, 37, 38; 54, 55).  Plaintiff never worked in a different 7-Eleven store.  (*App.* 39, 40).[1]

Plaintiff's supervisor was Store Manager Yonas Selassie.  (TAP ¶5; *App.* 161). Selassie's supervisor was Field Consultant Selette Bryant, who was responsible for overseeing seven to nine 7-Eleven stores.  (*App.* 161, 166).  Defendant Darcia Adams was a Human Resources Generalist with 7-Eleven during Plaintiff's entire tenure and responsible for the employee relations in 7-Eleven's Central Division, including Store No. 32804.  (*App. 73, 74, 75*). Adams was responsible for investigating and responding to employees' concerns and for ensuring that 7-Eleven policies and procedures were being followed.  (*App.* 75).

Plaintiff told 7-Eleven during her interview that she was willing to work for two years, but was not promised that she would be employed for two years.  (*App.* 24-25).  Plaintiff acknowledges that she did not have a contract with Selassie, Adams or 7-Eleven.  (*App.* 20). Plaintiff understood that she could quit her job with 7-Eleven at any time.  (*App.* 20).

Plaintiff's employment was voluntarily terminated on March 8, 2007, for "dissatisfaction with management/policies."  (*App.* 123, 144, 145, 168, 171, 172, 173).  Plaintiff's last day worked was February 11, 2007.  (*Id.*, *see also* Section II, *infra*).  As discussed further below, Plaintiff employment was voluntarily separated after she refused to continue working at the Rowlett store with Selassie.  (*App.* 123, 162, 167, 168).

Plaintiff claims that her employment was terminated on January 21, 2007.  (*App.* 7). Plaintiff has no documents to support this assertion.  (*App.* 7-8).  Plaintiff claims that Selassie did not give her a reason for her alleged termination on January 21, 2007.  (*App.* 8-9).  Plaintiff also

---

[1]     The Appendix of Exhibits will be cited as "*App.*"  The pages in the Appendix have been consecutively numbered as required by the Local Rules.

claims her employment was terminated on February 25, 2007 and March 2, 2007.  (TAP ¶18).

Plaintiff claims that the last day she worked with 7-Eleven was January 21, 2007.  (*App.* 21).

Plaintiff admits that she was paid by 7-Eleven for work time *after* January 21, 2007.

(*App.* 21).  Specifically, Plaintiff admits to clocking in and being paid for her time on February 9,

2007, and February 11, 2007.  (*App.* 11, 15, 16, 17).   Plaintiff could not have clocked in to the

payroll system nor be paid if she were not a 7-Eleven employee at that time.  (*App.* 96).

## II.   <u>7-Eleven's Payroll System And Policies Regarding Clocking In & Out.</u>

7-Eleven's payroll system is referred to as the "ISP."  (*App.* 95-96).  Only employees of

7-Eleven are recognized by the ISP.  (*App.* 95, 96).  An individual who is not an employee of

7-Eleven would not be able to clock in or out of the ISP.  (*App.* 96).  Simply put, the payroll

system does not recognize an individual who is not a 7-Eleven employee.  (*App.* 96).  An

employee clocks in and out on the ISP by keying in their Social Security number.  (*App.* 42-43;

96).  If a terminated employee tried to clock in to the ISP using their Social Security number, the

system would not recognize them and an error message would be generated.  (*App.* 96).[2]

Under 7-Eleven policy, "each employee is responsible for the accurate documentation of

his or her time on the store time sheet or ISP."  (*App.* 44, 56-57).  This policy applied to Plaintiff

during her employment, and she signed the policy.  (*App.* 45, 46, 57).  In addition, it is each

employee's responsibility to clock in and clock out.  (*App.* 46, 60).  Plaintiff also signed this

policy document and admits that it applied to her.  (*App.* 48, 68).  It is a violation of 7-Eleven

policy when an employee fails to clock out.  (*App.* 94).  Under 7-Eleven policies and procedures,

---

[2]     An employee's activity on the ISP is shown on a timesheet report.  (*App.* 126).  The timesheets show
employee activity and all modifications made to an employee's entries, including time deletions.  (*App.* 126).  Time
entries on the ISP cannot be redacted, and the timesheets show an activity trail for each time an employee clocks in
and out.  (App. 126-127).

an employee could be written up, disciplined and ultimately terminated for failure to clock out properly.  (*App.* 94).

Plaintiff testified that she accurately clocked in and out each time she worked other than one time she forgot to clock out, which she does not remember.  (*App.* 41-42).  Plaintiff also stated that she "can't perfectly put the nine numbers without any problems," in reference to clocking in and out of the ISP.  (*App.* 44).  Plaintiff's claim that she failed to clock out "maybe once" is simply incorrect when considering her testimony along with the timesheets generated by 7-Eleven's payroll system.  (*App.* 48-49; 146-155).  There are numerous instances clearly shown on Plaintiff's timesheets in which time accrued for a 24 hour period, which unquestionably shows that Plaintiff failed to clock out.  (*App.* 127-129; 149).  Plaintiff's claim is further unconvincing considering that she admitted she was never scheduled to work more than 15 hours in a day.  (*App.* 39).  Plaintiff also does not remember ever working a 10 hour shift.  (*App.* 39).  Plaintiff's timesheets show many instances where time would run for over 10 and even 15 hours, demonstrating that Plaintiff did not clock out on these occasions.  (*App.* 93-94).

III.    **Plaintiff's February 2007 Discussions With Management.**

      1.    **February 9, 2007 Meeting With Human Resources.**

            a.    Adams' Notification Of Plaintiff's Concerns.

Adams first spoke with Plaintiff in February 2007.  (*App.* 88).  On February 6, 2007, Adams received an email from 7-Eleven Public Relations Director, Margeret Chabris, who had received a call from Plaintiff.  (*App.* 89, 90, 142).  This was the first complaint that Adams in Human Resources received from Plaintiff.[3]  (*App.* 90).   Adams did not know Plaintiff prior to her call to Plaintiff in February 2007.  (*App.* 89).

---

[3]    As determined through discovery in this case, Plaintiff called the 7-Eleven "Hotline" twice in January 2007, but calls to the Hotline do not go directly to Human Resources.  (*App.* 134).  Adams did not have any

Plaintiff's employment could not have been terminated without authorization from Adams, who was responsible for employee relations in Store 32804. (*App*. 78).[4]  Adams, as Human Resources Generalist, was responsible for investigating and responding to employees' concerns upon notification. (*App*. 75).  Adams also trained Store Managers on 7-Eleven policies and procedures, including wage and hour laws, hiring, recruiting, separation policies and law. (App. 76).  Adams trained Selassie on these policies. (*App*. 76-77).

Consistent with her role, Adams immediately started an investigation into the contents of Chabris' email. (*App*. 90).  Plaintiff was an employee of 7-Eleven on February 6, 2007, when Adams received the email. (*App*. 91).  Adams contacted Plaintiff to discuss the issues she had brought up with Chabris and scheduled a meeting with Plaintiff to investigate the contents of the email she received. (*App*. 90, 92).

On February 9, 2007, Plaintiff had a meeting with Adams. (*App*. 9).  Adams and Plaintiff met in the Store No. 32804 office. (*App*. 91, 92).  Adams and Plaintiff conducted the meeting in English. (*App*. 92).[5]

Plaintiff was a 7-Eleven employee at the time of the meeting. (*App*. 92).  Plaintiff clocked in for the meeting, (*App*. 9, 10, 11), and clocked out immediately after the meeting. (*App*. 11).  Indeed, Plaintiff's timesheets show that she was paid for 2.88 hours on February 9,

---

knowledge of the Hotline calls. (*App*. 136).  7-Eleven Hotline calls are answered by a call center, which is staffed by non-Human Resources employees and sometimes by an outside vendor. (*App*. 134).  Employees are able to *directly* contact Human Resources by using either of the two numbers listed on the 7-Eleven Open Door Philosophy that is provided to employees upon hire and is posted in the store. (*App*. 50, 69, 135, 136).  Furthermore, the ISP (which employees must use to clock in and clock out for work) also has a number to *directly* contact Human Resources. (*App*. 135-136).  Finally, 7-Eleven's anti-discrimination policy provides a *direct* contact number to Human Resources. (*App*. 138).  The Hotline number is not a way to directly contact Human Resources.

[4]     In 2007, Adams had approximately 15 years of human resources experience, plus a Bachelors of Science in Human Resources Management and a PHR certification. (*App*. 76-87).

[5]     Plaintiff requested and was provided an Amharic language interpreter for her April 28, 2010, deposition, but during her employment she communicated in English and spoke with her supervisor, Selassie, in English. (*App*. 34).  Plaintiff understands English and can read and write in English. (*App*. 5-6).

2007, and that she was clocked into the 7-Eleven payroll system from 9:19 am to 12:12 pm. (*App*. 154). Plaintiff admits she received payment for her time in the February 9, 2007, meeting. (*App*. 15-17). Adams told Plaintiff that she was employed at that time. (*App*. 26).

           b.        <u>Plaintiff's Payroll Concerns Addressed By Adams.</u>

In the February 9, 2007, meeting, Plaintiff claimed that she was not receiving her paychecks. (*App*. 102-03). It was confirmed, however, that Plaintiff had direct deposit and the paycheck was deposited into Plaintiff's bank account each pay period. (*App*. 102-03). Plaintiff had not picked up her nonnegotiable pay stubs that were in a store drawer. (*App*. 22, 102-03). The general practice in the store was for employees to pick up their pay stubs from the drawer. (App. 23, 104). Adams spoke with Selassie about Plaintiff's concerns about her pay stub. (*App*. 104). Selassie was not aware of the problem because he did not go in the drawer; the stubs were placed directly in the drawer to be picked up by the employees. (*App*. 104).

In addition, in the meeting Adams discussed Plaintiff's timesheets with her along with her payroll checks. (*App*. 92-93). Plaintiff was confused about the modifications on her timesheets. (*App*. 44). Adams reviewed the store schedule (including store documents that Plaintiff had taken without authorization) along with Plaintiff's timesheets, which showed the times that Plaintiff had clocked in and clocked out on the days that she worked. (*App*. 93, 139-140). Adams and Plaintiff also reviewed Plaintiff's payroll checks. (*App*. 93). When reviewing the timesheets, Adams found that there were instances that Plaintiff did not clock out and the payroll system continued to run (even though she was not working). (*App*. 93). The timesheets showed that Plaintiff had not clocked out. (*App*. 93-94). For instance, on the timesheets Adams and Plaintiff found that she had been clocked in for a 24 hour period on more than one occasion.

(*App.* 95).  Plaintiff admitted in the meeting that she did not work a 24 hour shift and that she had not clocked out.  (*App.* 95).

An example of Plaintiff's failure to clock out can be found on October 8, 2006, when Plaintiff clocked into the payroll system at 22:17.  (*App.* 149).  Subsequently, on October 9, 2006, the system continued to run, which demonstrates that Plaintiff did not clock out on October 8, 2006 after her shift.  (*App.* 127, 128, 149).  The system actually continued to run until October 12, 2006, when Plaintiff clocked <u>in</u> at 5:36.  (*App.* 128-129).  Plaintiff does not claim to have worked 24 hour shifts on October 9-12, 2006.  (*App.* 48).  Another example of what Adams reviewed with Plaintiff and where Plaintiff did not clock out can be found at the time entries for January 2, 2007, and January 10, 2007.  (*App.* 49; 130-132; 153).  These are examples of the issues that Adams went through with Plaintiff in the meeting when Plaintiff admitted she did not clock out.  (*App.* 130).

Adams talked to Plaintiff about the need to properly clock in and out, and explained what the timesheets showed regarding her failure to clock out.  (*App.* 105-06)  It was explained that the modifications were done by the Store Manager to correct her time due to her failure to properly clock out as required by 7-Eleven policy.  (*App.* 105-06).  Adams believed that Plaintiff's concerns regarding pay had been resolved in the February 9, 2007, meeting.  (*App.* 105-06).  Selassie also believed the pay issues were resolved at that time.  (*App.* 119, 162-63).  Indeed, Plaintiff told Adams that, after their review of the timesheets and payroll, she felt the issue was resolved.  (*App.* 105-06).

c.      Plaintiff's Refusal To Work At The Rowlett Store With Selassie.

Also during the February 9, 2007, meeting, Adams investigated Plaintiff's claim that Selassie discriminated against her. (*App.* 92-93; TAP ¶8). Plaintiff told Adams that she did not want to work with the Store Manager, Selassie. (*App.* 100). Plaintiff said that she was not going to work for him and that she would not continue to work in that store. (*App.* 100). Plaintiff did not claim that Selassie was making threats towards her. (*App.* 99). Plaintiff told Adams that she did not like Selassie because she was from a neighboring city in Ethiopia (which had conflicts with Selassie's home region). (*App.* 99-100). (Plaintiff is actually from Deberzite, Ethiopia. (*App.* 10)). That was the only reason Plaintiff expressed to Adams as to why she believed that Selassie did not like her. (*App.* 100). Selassie had never said anything to her about their home region, but Plaintiff "just knew it." (*App.* 101).

After Plaintiff told Adams about her perceived problems with Selassie, she continued her investigation by calling Selassie into the meeting. (*App.* 100-01). Adams asked Selassie to help her understand the problems Plaintiff was referring to. (*App.* 101). Selassie explained that there was ongoing conflict in Ethiopia, but that he had been in the United States for a long time and had no involvement with the conflicts. (*App.* 101, 162). Any conflicts in Ethiopia had no impact on Selassie running his store in Texas. (*App.* 162). At that time, Selassie told them that Plaintiff was welcome to continue working in the store. (*App.* 162). When Selassie was informed that Plaintiff refused to work in the store he was concerned because he needed Plaintiff to work hours as an employee in the store and would be understaffed if she left. (*App.* 122, 162).

Additionally, Selassie had not terminated Plaintiff's employment prior to the February 9, 2007, meeting.  (*App.* 161-163)[6]  Nor did Selassie tell Adams that he had terminated Plaintiff's employment or that he wanted to do so.  (*App.* 122).  As stated above, Plaintiff's employment could not have been terminated without Adams' approval.  (*App.* 78).

Selassie told Adams (and Plaintiff) that he did not have a problem with Plaintiff but that she was a difficult employee – she would yell and curse at him and other employees in the store.  (*App.* 101, 161).  For example, in some of the instances that Selassie discovered that Plaintiff had not clocked out, he called her to find out what time she had finished work.  (*App.* 97-98).  Plaintiff would yell and curse at Selassie when he called.  (*App.* 98, 162).  Plaintiff would hang up on Selassie when he called.  (*App.* 161, 162).  In addition, Plaintiff left at least one voice mail for Selassie in which she cursed at him, said she hated him, and called him names.  (*App.* 98, 99, 162).  Plaintiff said she was going to get him and that she would make him pay.  (*App.* 99, 161).  Adams listened to the voice mail in her February 9, 2007, meeting with Plaintiff.  (*App.* 98, 162).  At that time, Plaintiff admitted to Adams that she left the message, and apologized to Selassie.  (*App.* 102 162).

After Plaintiff told Adams that she was going to refuse to return to work at her store, Adams asked if Plaintiff was resigning from employment.  (*App.* 106, 162).  Adams did not ask Plaintiff to resign.  (*App.* 107).  Plaintiff said that she was not resigning but that she was not going to work in that store and she was not going to work for Selassie.  (*App.* 106, 161-63).

According to Plaintiff, on February 9th, Adams told Plaintiff that if she did not want to resign she could check with them on February 11th.  (*App.* 12-13).  Plaintiff said she did not want

---

[6]       Plaintiff was not suspended by Selassie either.  7-Eleven maintains a policy that should be followed to suspend an employee.  (*App.* 125).  Part of the procedure would be to contact Adams in Human Resources – Adams was not contacted about a suspension and there is no record of a suspension.  (*App.* 125-126).

to resign, but wanted Selassie fired.  (*App.* 13, 106).  Plaintiff did not complain about her Field

Consultant, Bryant.  (*App.* 106).

Adams wanted to provide Plaintiff the option to transfer to another store because she was

unwilling to work at her then-current store, <u>not</u> because of the pay concerns that were resolved.

(*App.* 118).  Thus, after the meeting, Adams passed along the issue of Plaintiff's refusal to work

for Selassie to Plaintiff's Field Consultant, Bryant.  (*App.* 13, 106, 107, 108).   Bryant had

knowledge of openings in the area and Plaintiff could discuss transfer options with her.  (*App.*

107).  Adams told Bryant that Plaintiff was refusing to return to work at Store No. 32804.  (*App.*

108, 166).  Therefore, Adams asked Bryant to work with Plaintiff to see if she could be placed in

another store.  (*App.* 108, 166, 167).  Adams also asked Bryant to further investigate the issues

that Plaintiff had with Selassie to possibly find any examples of why she did not want to work

there because she provided no examples to Adams.  (*App.* 108).

## 2.      Plaintiff's February 11, 2007, Meeting With Selette Bryant.

Plaintiff met with Sellete Bryant on February 11, 2007.  (*App.* 16, 112, 143, 167.).  The

meeting lasted for about 10 to 15 minutes.  (*App.* 16).  Plaintiff was clocked into the 7-Eleven

system from 4:03 pm to 5:15 pm.  (*App.* 154).  Plaintiff was paid for her time at the store for the

meeting.  (*App.* 16-17).  Plaintiff was an employee on February 11, 2007.  (*App.* 113, 133).

Bryant met with Plaintiff to discuss her refusal to work at the Rowlett store with Selassie.

(*App.* 167).  Bryant was not asked by Adams to investigate any payroll issues.  (*App.* 116, 117,

167).  Therefore, Bryant did not discuss any payroll issues with Plaintiff.  (*App.* 17-18, 143,

167).  In the meeting, Plaintiff told Bryant that she did not want to work in the Rowlett store with

Selassie.  (*App.* 109-110, 162, 163, 167).  Plaintiff told Bryant that she had hung up on Selassie

and that she no longer wanted to work at Store No. 32804.  (*App*. 143, 167, 170).  Plaintiff wanted to find another store to work at.  (*App*. 110).

Because Plaintiff was not willing to work at her current store, Bryant offered Plaintiff the option to transfer to another 7-Eleven store.  (*App*. 108, 143, 166, 167, 170).  An option to transfer was regularly provided to employees who no longer wanted to work at their store.  (*App*. 110, 168).[7]  Bryant provided Plaintiff the option to transfer and allowed her two weeks to find a store and contact her.  (*App*. 168).  Bryant told Plaintiff that she would give her two weeks, until February 25, 2007, to find another store and if she did not hear from her by then her employment would be terminated.  (*App*. 17; 110, 167).  Plaintiff testified that she asked Bryant if she was fired and Bryant said that she "didn't know."  (*App*. 18).

After the February 11, 2007 meeting, Bryant contacted Adams.  (*App*. 109).  A February 12, 2007, email to Adams summarizes Bryant's meeting with Plaintiff.  (*App*. 112, 167).  Bryant's recap has no mention of a discussion regarding any pay concerns, because payroll concerns were not discussed by Bryant as they were believed to have been resolved.  (*App*. 112, 143, 167, 170).  Plaintiff was an employee on February 12, 2007.  (*App*. 113).

### 3.    Plaintiff's Fails To Contact Adams, Bryant Or Selassie Regarding Her Intentions To Return To Work.

Adams did not speak to Plaintiff after their February 9, 2007, meeting.  (*App*. 113).  Plaintiff claims that she attempted to contact Adams, but admits that she never spoke with Adams after their meeting.  (*App*. 19).  Bryant also did not tell Adams that she heard from

---

[7]       7-Eleven regularly provides employees the option to transfer to other stores, and Plaintiff was not the only employee provided this option.  (*App*. 110, 168).  There were certain policies and procedures in place for an employee transfers, such as the one offered to Plaintiff.  (*App*. 110).  The policy required the employee to find a location where there was an opening.  (*App*. 111).  After the location was found by the employee, the employee needed to get authorization from the Store Manager of the new location.  (*App*. 111, 168).  The new Store Manager would then have to get approval from the Field Consultant.  (*App*. 111, 168).  The employee's current Store Manager would not be involved and would not have to approve the transfer.  (*App*. 111, 168).  As a result, in Plaintiff's situation, Selassie would <u>not</u> have been involved with Plaintiff's transfer process or approval.  (*App*. 112).

Plaintiff after her February 11, 2007, meeting with Plaintiff. (*App*. 114-15). Plaintiff did not contact anyone to tell them she was willing to return to work at Selassie's store. (*App*. 115, 161-63, 167-69). Selassie believed that Plaintiff did not want to work in the store because she told him and Adams that during the first meeting and him and Bryant during the second meeting. (*App*. 162).

Plaintiff asserts that Bryant called her on February 25, 2007, to check if Plaintiff had found a store. (*App*. 18). Plaintiff testified that she told Bryant that she had not found a store. (*App*. 18).

Regardless, on February 26, 2007, Adams sent Plaintiff a letter to let Plaintiff know that they had been trying to reach her and that they wanted to know if she had intentions of returning to work. (*App*. 114). <u>Plaintiff received the letter from Darcia Adams.</u> (*App*. 35). Through the February 26, 2007, letter, Adams wanted to reiterate that Plaintiff had the option to transfer, and what she needed to do to transfer. (*App*. 120, 121). Plaintiff was an active employee on February 26, 2007, when Adams sent the letter. (*App*. 115). Adams provided Plaintiff an additional week, until March 2, 2007, to locate a store, however, Plaintiff still did not contact Adams or Bryant. (*App*. 53, 116, 168).

Adams did not hear from Plaintiff after she sent the February 26, 2007, letter. (*App*. 123). Likewise, neither Selassie nor Bryant heard from Plaintiff after the February 26, 2007, letter. (*App*. 113, 163, 169). Plaintiff did not at any time contact at 7-Eleven regarding her intention to return to work or to inform them she had found a store to which to transfer. (*App*. 113, 123, 161-63, 167-69).

On March 8, 2007, the voluntary separation of Plaintiff's employment was processed. (*App*. 169, 172, 173). Plaintiff's employment was terminated for "dissatisfaction with

management/policies." (*App.* 123, 169, 172, 173). Plaintiff employment was separated voluntarily; in other words, she quit. (*App.* 123; 172). Plaintiff's termination paperwork shows her last day worked as February 11, 2007, which means that was the last day that she worked in the store. (*App.* 124).

IV. **Plaintiff's Alleged Defamatory Statements.**

One statement that Plaintiff asserts is defamatory is from 7-Eleven's October 31, 2007, position statement, submitted to the EEOC in response to Plaintiff's EEOC charge of discrimination. (*App.* 29, 30, 157-159, TAP ¶29). Plaintiff also contended in her deposition that a February 12, 2007, email from Bryant to Adams contained defamatory statements. (*App.* 30, 31, 32). Plaintiff testified that the email stated "if you cannot work with [Selassie], it is your problem. We cannot help it." (*App.* 31). The only email that Bryant sent to Adams on February 12, 2007 regarding Plaintiff, however, does not contain that statement. (*App.* 143)

## LEGAL ARGUMENT

I. **The Applicable Legal Standard For Summary Judgment**.

This Court may grant summary judgment on a claim if the record shows that there is no genuine issue of material fact and that "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact, 'but need not negate the elements of the nonmovant's case.' " Little v. Liquid Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

The nonmovant must set forth specific facts that show a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The nonmovant cannot rely on conclusory allegations, improbable inferences, and unsupported speculation. Krim v. BancTexas Group,

<u>Inc.</u>, 989 F.2d 1435, 1449 (5th Cir. 1993).   Bare allegations in briefs and pleadings are insufficient to withstand summary judgment.  <u>Alizadeh v. Safety Stores, Inc.</u>, 802 F.2d 111, 113 (5th Cir. 1986).  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  <u>Id</u>. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  <u>Anderson,</u> 477 U.S. at 248.  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  <u>Celotex</u>, 477 U.S. at 322-23.

## II.    <u>Plaintiff Cannot Establish Her Breach of Contract Claim in Count I.</u>

Plaintiff's breach of contract claims fails because no valid contract exists.  The elements of a breach of contract claim are:  "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages to the plaintiff as a result of the breach."  <u>Frazin v. Hanley</u>, 130 S.W.3d 373, 376 (Tex. App. 2004).  Plaintiff does not allege in the TAP that she had a contract with any of the Defendants. Moreover, Plaintiff conceded at her deposition that she did not have a contract with 7-Eleven, Adams or Selassie.  (*App*. 20).  Thus, Plaintiff's breach of contract claim fails.

Additionally, in Texas, employees are "at-will employees in the absence of a specific agreement to the contrary, and at-will employment 'may be terminated by the employer or the employee for good cause, bad cause, or no cause at all.'"  <u>Friend v. CB Richard Ellis, Inc.</u>, 2009 WL 417300, *2 (Tex. App. 2009) (quoting <u>Midland Judicial Dist. Cmty. Supervision & Corr. Dep't v. Jones</u>, 92 S.W.3d 486, 487 (Tex. 2002)).  For an employment agreement to be found, an "employer must unequivocally indicate a definite intent to be bound not to terminate the

employee except under clearly specified circumstances." <u>Montgomery County Hosp. Dist. v. Brown</u>, 965 S.W.2d 501, 502 (Tex. 1998).   In other words, to be valid, an employment agreement must be "(1) expressed rather than implied, and (2) clear and specific." <u>Misch v. Exxon Corp.</u>, 979 S.W.2d 700, 703 (Tex. App. 1998).

Here, Plaintiff is not alleging that a valid employment agreement existed between her and 7-Eleven nor has she provided any evidence to support such an allegation.   Plaintiff understood that she could leave her employment at any time and does not claim that 7-Eleven promised her employment for a definite period of time.   (*App*. 24-25).   Plaintiff, therefore, was an at-will employee with no employment agreement.   Plaintiff has not established a breach of contract claim and the Court should enter summary judgment in Defendants' favor on Count I.

**III.     Plaintiff Cannot Establish Her FLSA Retaliatory Discharge Claim in Count II.**

      A.     FLSA Retaliation "But For" Standard.

Plaintiff bears the initial burden to make out a prima facie case of retaliation.   A prima facie case has three parts:  (1) participation in a protected activity; (2) an adverse employment action; and (3) a causal link between the two.   <u>See</u> <u>Hagan v. Echostar Satellite, LLC</u>, 529 F.3d 617, 624 (5th Cir. 2008).   If Plaintiff establishes a prima facie case, the burden shifts to 7-Eleven to articulate a legitimate, nonretaliatory reason for its decision to take the adverse employment action.   If 7-Eleven can provide such a reason, the burden returns to Plaintiff to show that the proffered reason is a pretext for retaliation.   <u>Id</u>.   Plaintiff's summary judgment burden during this third stage is to raise a fact issue as to whether 7-Eleven took the action against Plaintiff "because of" her protected activity.   <u>Id.</u> (citing <u>Kanida v. Gulf Coast Medical Personnel LP</u>, 363 F.3d 568, 576 (5th Cir. 2004)).   This is a "but for" causation standard.   <u>Kanida</u>, 363 F.3d at 580.

B.      Plaintiff Cannot Establish A Prima Facie Case Under The FLSA.

a.      Plaintiff Has Not Established That She Engaged In A Protected Activity.

An informal, internal complaint may constitute protected activity under the FLSA. Hagan, 529 F.3d at 626. The Fifth Circuit, however, clearly stated in Hagan that there are limits: "not all abstract grumblings or vague expressions of discontent are actionable as complaints." Id. The complaint must "concern some violation of law." Id.

The issues that Plaintiff discussed with Adams do not rise to the level of protected activity. There are no facts in the record showing that Plaintiff's concerns were voiced explicitly for the purpose of complaining about violations of the FLSA. Plaintiff's complaint was not a protected activity, in that she did not complain of any illegality by 7-Eleven in its payroll process. Rather, her complaint was that *her* hours were wrong. "Although [s]he was concerned that [s]he not be shorted on … pay due [her], this complaint more closely resembles a "grumbling" or "vague expression of discontent" as contemplated by the Fifth Circuit in Hagan, rather than an accusation of illegality." Leps v. Farmers Ins. Exchange, 2010 WL 2470995, *4 (N.D.Tex. 2010) (citing Hagan, 529 F.3d at 626).

In addition, Plaintiff's refusal to work with her Store Manager for unspecified reasons and her failure to retrieve her nonnegotiable pay stubs did not rise to the level of protected activity under the FLSA. There were no more than vague expressions of discontent with her employment. Plaintiff has not set forth sufficient evidence to raise a genuine issue of material fact as to whether she engaged in protected activity. Therefore, Defendants are entitled to summary judgment on this claim.

b.      Plaintiff Did Not Suffer An Adverse Action.

Plaintiff's claim also fails because she did not suffer an adverse action.  Because Plaintiff voluntarily quit, she would have to prove that she was constructively discharged in order to establish an adverse action under the FLSA.  Plaintiff cannot do so because she was provided with two alternatives to her resignation and instead voluntarily chose to end her employment.

"[T]he assessment [of] whether real alternatives (to resignation) were offered is gauged by an objective standard rather than by the employee's purely subjective evaluation; that the employee may perceive his only option to be resignation [   ] is irrelevant."  Chandler v. La Quinta Inns, Inc., 264 Fed.Appx. 422, 426 (5th Cir. 2008); Hargay v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995) (quotation omitted). " '[T]he mere fact that the choice is between comparably unpleasant alternatives [   ] does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary.' "  Hargay, 57 F.3d at 1568.  This is so because the fact remains that a plaintiff faced with uninviting alternatives still has a choice.  Id. ("Resignations obtained in cases where an employee is faced with [   ] unpleasant alternatives are nevertheless voluntary because the fact remains that plaintiff *had a choice*.  [Plaintiff] could stand pat and fight.").

The undisputed evidence in this case shows that Plaintiff had a choice to stay at the Rowlett store but did not want to do so.  As a result, Plaintiff was offered another alternative - to transfer to another store.  Plaintiff, however, chose a third alternative – voluntarily separating her employment by failing to respond to Adams or Bryant.  Plaintiff undisputedly received a letter from Adams and never informed Adams, Selassie or Bryant that she intended to return to work.  Plaintiff's resignation was voluntary because she had a choice.  Hargray, 57 F.3d at 1567.

Because Plaintiff did not suffer an adverse action, this Court should enter summary judgment in favor of the Defendants on this claim.

        c.      <u>No Causal Connection Has Been Established</u>.

Even if the Court finds that Plaintiff engaged in a protected activity and suffered an adverse action, Plaintiff still cannot establish a prima facie case of retaliation because there is no causal connection between the two.  Mere temporal proximity alone is insufficient to raise a fact question.  <u>Strong v. University Healthcare System, L.L.C.</u>, 482 F.3d 802, 808 (5th Cir. 2007).

Any temporal proximity here is inadequate because Bryant (who offered Plaintiff the option to transfer) was not aware that Plaintiff had concerns about her payroll (the only possible protected activity engaged in by Plaintiff) at the time of her meeting.  (*App*. 167-169).  Plaintiff testified that she did not discuss her payroll issues with Bryant.  (*App*. 17-18).  Plaintiff's own Complaint alleges that Bryant did not know anything except that Plaintiff "didn't not like working" at the Rowlett store.  The evidence of record shows that <u>all</u> parties involved believed the pay concerns were resolved.  The action was not taken in response to Plaintiff's purported protected activity, but rather in response to Plaintiff's refusal to work at her store.  Indeed, the ultimate reason for her separation has not been challenged or proven false, *as Plaintiff admits that she was provided two weeks to find another store and that she did not find another store*.

Plaintiff has no evidence, beyond mere conjecture, to raise any reasonable inference of retaliation for engaging in a protected activity under the FLSA.  There is no evidence of Bryant having knowledge of Plaintiff's wage complaints.  Plaintiff cannot show a genuine issue of material fact as to the third prong of her prima facie case of retaliation under the FLSA.  <u>Leahy v. Anderson Crenshaw & Associates, LLC</u>., 2010 WL 1459197, *5-6 (N.D.Tex. 2010). Defendants are entitled to summary judgment on Count II.

## C.       Plaintiff's Separation Was Not "But For" A Protected Activity.

To establish an FLSA retaliation claim, a plaintiff must show that the adverse employment action would not have occurred "but for" plaintiff's protected activity.  Kanida v. Gulf Coast Medical Personnel LP, 363 F.3d 568, 580 (5th Cir. 2004).  The "ultimate burden of persuading the trier of fact that the defendant retaliated against the plaintiff remains at all times with the plaintiff."  Gee v. Principi, 289 F.3d 342, 348 (5th Cir. 2002) (internal brackets, citations, & quotation marks omitted).  Plaintiff has failed to adduce evidence sufficient to carry her burden.  See, e.g., Rios v. Rossotti, 252 F.3d 375, 380 (5th Cir. 2001) ("For retaliation claims, this final burden requires the plaintiff to demonstrate that the adverse employment action would not have occurred 'but for' the protected activity."); Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir. 1999) (In a retaliation claim, "[u]ltimately the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred.").

Plaintiff cannot state, in good faith, that her employment with 7-Eleven or at the Rowlett store would have continued "but for" the payroll concerns she discussed and resolved with Adams.  This is so for several reasons.  First, Plaintiff refused to work with her Store Manager.  Second, Plaintiff was insubordinate, yelling, cursing and hanging up on her Store Manager.  Third, Plaintiff violated 7-Eleven policy on a regular basis when she failed to clock out properly.  Any one of these instances by itself could have resulted in the separation of Plaintiff's employment at any time.  In no way does the undisputed evidence in this case show that "but for" Plaintiff's "confusion" regarding her pay, her employment would have continued.  Summary judgment should be entered in Defendants' favor on Count II.

**IV.   Plaintiff Cannot Establish Her Claim For Fraudulent Misrepresentation In Count III.**

Plaintiff has not established any of the elements of a prima facie case of fraudulent misrepresentation.  To establish a prima facie case of fraudulent misrepresentation, Plaintiff must show that Defendants:  "(1) made a material misrepresentation to [Plaintiff], (2) with knowledge of its falsity or recklessly without any knowledge of the truth and as a positive assertion, and (3) with the intention that [Plaintiff] should act on the misrepresentation, and (4) that [Plaintiff] acted in reliance on the misrepresentation and thereby suffered harm."  Texas First Nat'l Bank v. Ng, 167 S.W.3d 842, 852 (Tex. App. 2005).  The "mere failure to perform" is not sufficient to establish fraud.  Id.

Plaintiff's TAP cites false promises and representation regarding her employment status to fraudulently manipulate documents.  (TAP ¶23).  Plaintiff also testified that her fraudulent misrepresentation claim is based on the representation to her that she was an employee even though she (allegedly) was not an employee in February 2007.  (App. 25-26).  Putting aside the fact the representations were true, Plaintiff's allegations are not enough to establish her claim.  An "at will" employee is barred from bringing a cause of action for fraud against her employer based upon the employer's decision to discharge the employee.  See Leach v. Conoco, Inc., 892 S.W.2d 954, 960-61 (Tex.App.-Houston [1st Dist.] 1995); see also Crow v. Rockett Special Utility Dist., 17 S.W.3d 320, 329-330 (Tex.App.-Waco 2000) ("If an at-will employee such as [plaintiff] were allowed to assert that his employer's policies constitute fraudulent representations, then the at-will employment doctrine would be effectively eviscerated."), disapproved on other grounds by Binur v. Jacobo, 135 S.W.3d 646, 651 n. 11 (Tex. 2004).

Moreover, Plaintiff has provided no evidence that any Defendant made a material misrepresentation with "intent to deceive and with no intention of performing as represented."

See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998).  Nor has Plaintiff shown that she acted on a misrepresentation and suffered harm therefrom.  Accordingly, summary judgment is appropriate on Count III.

**V.      Plaintiff Cannot Establish Her Claim For Conspiracy In Count IV.**

Plaintiff's claim for conspiracy fails because the alleged conspirers, Adams and Selassie, were employees of 7-Eleven during the relevant time period.  A claim for conspiracy requires: "(1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means); (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." Greenberg Traurig of New York, P.C. v. Moody, 161 S.W.3d 56, 80 (Tex. App. 2004).  Under the intracorporate conspiracy doctrine, a corporation cannot conspire with its employees since "a corporation and its agents constitute a single 'person' and therefore cannot form a conspiracy." Fojtik v. First Nat'l Bank of Beeville, 752 S.W.2d 669, 673 (Tex. App. 1988).

Plaintiff contends that Adams and Selassie conspired against her when they told Plaintiff that she was not terminated.  (*App*. 27-28).  Plaintiff relies upon the February 26th letter from Adams as evidence of conspiracy.  (*App*. 28).  Both Adams and Selassie were employees of 7-Eleven during the time of the actions alleged by Plaintiff.  Therefore, Adams and Selassie could not have conspired against Plaintiff with respect to her employment with 7-Eleven as a matter of law.  Summary judgment should be entered in favor of the Defendants on Count IV.

**VI.      Plaintiff Cannot Establish Her Defamation Claim In Count V.**

Plaintiff's defamation claim is based on a statement made by 7-Eleven to the EEOC in a position statement.  Statements made in judicial and quasi-judicial proceedings are absolutely privileged and cannot be used to support a defamation claim.  James v. Brown, 637 S.W.2d 914,

916 (Tex. 1982); 5-State Helicopters, Inc. v. Cox, 46 S.W.3d 254, 256 (Tex.App. 2004). Statements made to the EEOC in the course of an investigation are absolutely privileged. Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc., 698 F.Supp.2d 730, 766 (S.D.Tex. 2010) (citing Strickland v. Aaron Rents, Inc., 2006 WL 770578, *7-8 (W.D.Tex. 2006); James v. Brown, 637 S.W.2d at 916. Plaintiff admits that the statement is from 7-Eleven's position statement, (App. 29), and therefore has no actionable claim for defamation.

A defamation claim may also be avoided if the defendant's statements are qualifiedly privileged. Pioneer Concrete of Texas, Inc. v. Allen, 858 S.W.2d 47 (Tex.App. 1993). Accusations or comments made by an employer about an employee to one with a common interest enjoy a qualified privilege. Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 313 (5th Cir. 1995). Thus, if Plaintiff asserts that statements made in a February 12, 2007, email regarding her employment are defamatory, such statements enjoy a qualified privilege. (The statements alleged by Plaintiff do not appear on any document produced by either party in discovery.) Plaintiff must prove such statements were made with actual malice, which she has not done.[8]

Finally, a "statement must be false in order to be considered defamatory." Green v. CBS, 286 F.3d 281, 283 (5th Cir. 2002); Fowler v. Capital Cities/ABC, Inc., 2002 WL 31230802, *3 (N.D.Tex. 2002). Plaintiff presents no competent summary judgment evidence demonstrating that the statement is false or how the statement damaged her reputation. Thus, even if the Court finds that 7-Eleven's position statement provided to the EEOC during its investigation was not absolutely privileged, Plaintiff's defamation claim would still fail. The Court should dismiss Count V with prejudice as well.

---

[8]     Plaintiff bears the burden of presenting clear and convincing proof of actual malice in order to avoid summary judgment. Duffy, 44 F.3d at 313.

**VII.**   **Plaintiff Cannot Establish Her Claim For Negligent Supervision and Retention In Count VI.**[9]

Plaintiff has no evidence to support her claim for negligent supervision and retention. Negligent retention and supervision claims are simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability.  Morris v. JTM Materials, Inc., 78 S.W.3d 28, 49 (Tex.App.-Fort Worth 2002).   The elements of a negligence action are duty, a breach of that duty, and damages proximately caused by the breach.  Id.; Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).  "[A]n employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others."   Morris, 78 S.W.3d at 49.   The foreseeability determination hinges on whether sufficient evidence "exist[s] indicating that the defendant knew or should have known of the employee's incompetence or potential for causing harm."  Zarzana v. Ashley, 218 S.W.3d 152, 158 (Tex. App. 2007).

There is nothing to show that Selassie (or any other named employee) was incompetent or unfit for 7-Eleven to hire.  Dangerfield v. Ormsby,  264 S.W.3d 904, 912 -913 (Tex.App.-Fort Worth 2008).  There is also no evidence that Selassie was incompetent or unfit for a position as a Store Manager such that 7-Eleven was negligent in retaining him after he was hired.  See Fifth Club, Inc. v. Ramirez, 196 S.W.3d 788, 796 (Tex. 2006); Ogg v. Dillard's Inc., 239 S.W.3d 409, 422 (Tex. App.-Dallas 2007).  Additionally, there is no evidence that 7-Eleven should have provided more supervision beyond that which was given.  See Allsup's Convenience Stores, Inc. v. Warren, 934 S.W.2d 433, 437 (Tex. App.-Amarillo 1996).

---

[9]    Plaintiff has brought Count VI for negligent supervision and retention against only 7-Eleven.  (App. 32-33).

Plaintiff has also failed to establish an actionable injury caused by 7-Eleven's unspecified alleged negligence.  An employer's duty extends only to prevent the employee from causing *physical* harm to a third party.  Verinakis v. Med. Profiles, Inc., 987 S.W.2d 90, 97-98 (Tex.App.-Houston [14th Dist.] 1998); Garcia v. Allen, 28 S.W.3d 587, 592 (Tex. App. 2000). A claim for negligent supervision requires the claimant to prove "not only that the employer was negligent in hiring the employee, but also that the employee committed an actionable tort against her." Gonzales v. Willis, 995 S.W.2d 729, 739 (Tex. App. 1999).

Plaintiff has no evidence of physical harm to anyone, including herself.  She has no evidence of other complaints about Selassie (or any other employee).  Plaintiff was not responsible for supervising, hiring, training or investigating Selassie and has no knowledge of 7-Eleven's personnel actions with respect to Selassie.  Plaintiff does not even know if Selassie created a risk of harm to other employees.  Summary judgment is appropriate on Count VI.

## VIII.   Plaintiff's Cannot Establish Her IIED Claim In Count VII.

To establish her claim for intentional infliction of emotional distress ("IIED"), Plaintiff must show that 7-Eleven acted intentionally or recklessly and that the conduct was extreme and outrageous.  GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 611 (Tex. 1999) (citing Standard Fruit & Vegetable Co. v. Johnson, 985 S.W.2d 62, 65 (Tex. 1998)).  To qualify as "extreme and outrageous," the conduct "must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  GTE. Southwest, 998 SW2d at 611 (quoting Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994)).  In making this determination, "courts consider the context and the relationship between the parties."  Id. at 612.

Texas courts have adopted a strict approach to intentional infliction of emotional distress claims arising in the workplace. <u>Id</u>. "To establish a cause of action for intentional infliction of emotional distress in the workplace, an employee must prove the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct." <u>Id.</u> at 613. Furthermore, "[s]uch extreme conduct exists only in the most unusual of circumstances." <u>Id.</u>   No allegations or evidence meeting this standard exist in this case. In addition, "[a] claim for intentional infliction of emotional distress cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort." <u>Standard Fruit</u>, 985 S.W.2d at 68. Plaintiff testified that her IIED claim is based on the other claims in her complaint. (*App.* 33). Therefore, Count VII should be dismissed with prejudice as well.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants 7-Eleven, Inc., Darcia Adams and Yonas Selassie respectfully request that the Court grant the instant motion, enter summary judgment against Plaintiff on the Third Amended Petition, dismiss the case with prejudice, and grant such other relief as deemed necessary in the interest of justice.

Respectfully submitted,

**WELTER LAW FIRM, P.C.**

/s/ Eric A. Welter
Eric A. Welter, Esq.
State Bar No. 24054612
eaw@welterlaw.com
720 Lynn Street, Suite B
Herndon, Virginia 20170
(703) 435-8500
(703) 435-8851 (fax)
**COUNSEL FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via CM/ECF system, which will send a notice of electronic filing through the Court's electronic system on this 17th day of December 2010, to:

Jericho Demissie

8014 Amesbury Lane

Rowlett, Texas 75809


<u>/s/ Eric Welter</u>
**ERIC WELTER, ESQ.**