**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**JERICHO DEMISSIE,**

        **Plaintiff,**

**v.**                                 **Civil Action No. 3:09-CV-1153-M-BK**

**7-ELEVEN, INC., et al.,**

        **Defendants.**

## FINDINGS, CONCLUSIONS AND RECOMMENDATION

Pursuant to the District Court's order of reference filed July 6, 2009, and *Special Order* 3-283, this cause is now before the Court for a recommendation on Defendants' *Motion for Summary Judgment* (Doc. 56). For the reasons set forth herein, Defendants' *Motion for Summary Judgment* (Doc. 56) should be **GRANTED**.

## I. BACKGROUND

Plaintiff filed this employment and tort action in state court in July 2008. (Doc. 4, Exh. 1). In her third amended petition, she claimed that she worked as a cashier for 7-Eleven starting in June 2006 and, thereafter, 7-Eleven falsified her time records and did not compensate her properly, ultimately firing her in retaliation for her refusal to keep quiet about the matter. (Doc. 4, Exh. 48 at 1-2). She sued Defendants for breach of contract, retaliatory discharge based on her complaints under the Fair Labor Standards Act ("FLSA"), fraudulent misrepresentation, conspiracy, defamation, negligent supervision and retention, and intentional infliction of emotional distress. (*Id.* at 4-8). Defendants removed the case to this court in June 2009 and moved for summary judgment in December 2010. (Docs. 1, 56).

In January 2011, Plaintiff requested an extension of time to respond to the summary judgment motion.  (Doc. 60).  Plaintiff was anticipating the receipt from Defendants of discovery documents following the district judge's ruling on her then-pending appeal of the undersigned's denial of her *Motion for Sanctions*.  (Doc. 54).  After the district judge overruled Plaintiff's objections and upheld the denial of sanctions, this Court directed Plaintiff to respond to Defendants' summary judgment motion by February 16, 2011.  (Docs. 65, 66).  Instead, however, Plaintiff moved for a stay of the summary judgment proceedings and sought the district judge's permission to file an interlocutory appeal of the order denying sanctions.  (Docs. 67, 68).

The district judge denied Plaintiff's request for an interlocutory appeal, and the undersigned ordered Plaintiff to file her summary judgment response by February 28, 2011.  (Doc. 71, 72).  On February 22, 2011, however, Plaintiff filed an appeal directly to the Fifth Circuit Court of Appeals, which dismissed the case for lack of jurisdiction in May 2011.  (Docs. 73, 81).  Plaintiff still has not filed a response to Defendants' summary judgment motion despite being directed to do so twice before.  Moreover, she has attempted to delay the case by filing a frivolous interlocutory appeal and, most recently, representing to the Court that she is attempting to settle the case with Defendants, a representation that Defendants claim is categorically false.  (Docs. 82, 83).  The Court thus will address Defendants' *Motion for Summary Judgment* on the merits despite Plaintiffs' failure to respond.

## II.  ARGUMENTS AND ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). Unsubstantiated beliefs are not competent summary judgment evidence. *de la O v. Housing Authority of City of El Paso*, 417 F.3d 495, 502 (5th Cir. 2005). "Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, . . . if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 989 F.2d 1257, 1266 (5th Cir. 1991) (citation omitted and alternations in original).

### 1. Breach of Contract

Plaintiff's first cause of action is for breach of contract, and she contends that Defendants breached an agreement they had with her to pay her required wages. (Doc. 4, Exh. 48 at 4-5). The elements of a breach of contract claim in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages to the plaintiff as a result of the breach." *Frazin v. Hanley*, 130 S.W.3d 373,

376 (Tex. App. – Dallas 2004, no pet.). Plaintiff does not allege in her petition that she had an oral or written contract with any of the Defendants, and she admitted during her deposition that she did not have such a contract. (Doc. 58-1 at 20-21, 24-25; Doc 58-2 at 17). Accordingly, this claim fails, and Defendants are entitled to summary judgment in this regard. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### 2. Retaliatory Discharge

Plaintiff's next claim is that Defendants terminated her in retaliation for her complaints regarding her unpaid wages and Defendants' falsification of her payroll records in violation of the FLSA. (Doc. 4, Exh. 48 at 5-6). The evidence submitted by Defendants in support of their summary judgment motion shows that, on February 9, 2007, Plaintiff met with Darcia Adams, a 7-Eleven Human Resources Generalist, and claimed she was not receiving her paychecks. (Doc. 58-1 at 9; Doc. 84-1 at 5, 22-24). Adams nevertheless confirmed, and Plaintiff admitted, that her paychecks had been deposited directly into her bank account. (Doc. 58-1 at 22; Doc. 84-1 at 102-03). Plaintiff had not, however, always picked up her nonnegotiable pay stubs that were left for employees in a store drawer. (Doc. 58-1 at 22; Doc. 84-1 at 102-03).

Adams also discussed Plaintiff's timesheets with her during the meeting because Plaintiff was confused about the modifications that had been made to her timesheets. (Doc. 58-2 at 10, 92-93). Adams reviewed the store schedule along with Plaintiff's timesheets, which showed the times that Plaintiff had clocked in and out on the days she worked. (Doc. 84-1 at 93, 139-40). Adams found that there were numerous instances when Plaintiff did not clock out, and Plaintiff admitted that there were several times when she did not clock out because she was confused about the proper procedures and did not always enter her code correctly. (Doc. 58-2 at 9-10, 14-

4

15;  Doc. 58-5 at 5-9, 130-32, 149, 153; Doc. 84-1 at 24, 26).  Adams talked to Plaintiff about the need to properly clock in and out, and explained what the timesheets showed regarding her failure to clock out.  (Doc. 84-1 at 105-06).  Adams explained that the modifications to her timesheets were done by the Store Manager, Yonas Selassie, to correct Plaintiff's time due to her frequent failure to properly clock out, and Plaintiff admitted that she did not always clock out and said that she understood why the modifications were made.  (Doc. 58-5 at 7-10).  Plaintiff told Adams that, after their review of the timesheets and payroll, she felt the issue was resolved. (Doc. 58-4 at 2-3).  Plaintiff did not explain during her deposition the allegation in her complaint that Defendants' actions with regard to her paychecks violated the FLSA.

A *prima facie* case of retaliation under the FLSA requires a showing of: (1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the two.  *Hagan v. Echostar Satellite, LLC,* 529 F.3d 617, 624 (5th Cir. 2008).  An informal, internal complaint may constitute protected activity under the FLSA, but the complaint must concern a violation of law, not a vague expression of discontent.  *Id.* at 625-26.  Some circumstances that have constituted an informal complaint under the FLSA include (1) an employee's "outburst following her refusal to take part in what she thought was an unlawful scheme," (2) an employee's complaint of unlawful sex discrimination and statement that the employer was "breaking some sort of law" by paying her lower wages than her male counterparts, (3) complaints of female employees "about the unequal pay," and (4) an employee sending a memo requesting a pay raise to the president of the employer with an attached copy of the Equal Pay Act.  *Id.*  However, failure to frame a complaint in terms of the potential illegality of the problem when, in fact, there is no illegality, is not a sufficient complaint under the FLSA.

5

*Id.*

In this case, Plaintiff's complaints were merely about perceived mistakes with the receipt of her paychecks and modifications to her timesheets that were necessitated by her failure to properly clock in and out of work. Plaintiff did not explain how these complaints constituted FLSA violations and were anything other than "vague expressions of discontent." *Id.* Moreover, Plaintiff admitted during her deposition that she was paid her wages via direct deposit into her bank account. (Doc. 58-1 at 21-22; Doc. 58-2 at 8-10). She also previously admitted that she understood why the modifications to her timesheets were made. (Doc. 58-4 at 2-3). Accordingly, her FLSA retaliation claim fails, and Defendants are entitled to summary judgment on that claim. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### 3. Fraudulent Misrepresentation

Plaintiff contends in her complaint and deposition that Defendants misrepresented her employment status by telling her that she was still employed during a meeting, in order to induce her to rely on that misrepresentation and thereby suffer damages. (Doc. 4, Exh. 48 at 6-7; Doc. 58-1 at 25-26).

To establish a *prima facie* case of fraudulent misrepresentation, Plaintiff must show that: (1) Defendants made a material misrepresentation to her, (2) with knowledge of its falsity, or recklessly without any knowledge of the truth and as a positive assertion, (3) with the intention that she should act on the misrepresentation, and (4) Plaintiff relied on the misrepresentation and suffered harm. *Texas First Nat'l Bank v. Ng*, 167 S.W.3d 842, 852 (Tex. App. – Hous. [14th Dist.] 2005).

Assuming that Plaintiff was terminated as she contends, she cannot establish a tort claim

for fraudulent misrepresentation.  Under Texas law, the employment-at-will doctrine provides

that an employer may terminate an employee at-will and without cause. *Winters v. Houston*

*Chronicle Publishing Co.*, 795 S.W.2d 723, 723 (Tex. 1990).  With few exceptions not

applicable here, the employment-at-will doctrine places no duty on an employer regarding an

employee's continued employment.  *See Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735

(Tex. 1985).  Thus, the doctrine effectively bars tort claims based on the decision to discharge an

employee.  *Jones v. Legal Copy, Inc.* 846 S.W.2d 922, 925 (Tex. App. – Hous. [1st Dist.] 1993);

*see also Crow v. Rockett Special Utility Dist.,* 17 S.W.3d 320, 329-330 (Tex. App.– Waco 2000)

("If an at-will employee such as [plaintiff] were allowed to assert that his employer's policies

constitute fraudulent representations, then the at-will employment doctrine would be effectively

eviscerated."), *disapproved on other grounds by Binur v. Jacobo,* 135 S.W.3d 646, 651 n.11

(Tex. 2004).  Accordingly, Plaintiff's claim for fraudulent misrepresentation fails, and

Defendants are entitled to summary judgment on that claim.  *Matsushita Elec. Indus. Co.*, 475

U.S. at 587.

### 4.    Conspiracy

Plaintiff next claims that Defendants Adams and Selassie conspired to commit fraud

when they told her she was not terminated, but her timesheets reflected that she had been

terminated.  (Doc. 4, Exh. 48 at 7; Doc. 58-1 at 27-28).

To demonstrate a conspiracy to commit fraud, Plaintiff would have to show: (1) a

combination of two or more persons; (2) an unlawful purpose or a lawful purpose by unlawful

means; (3) a meeting of the minds on the course of action; (4) one or more illegal, overt acts; and

(5) damages.  *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 80 (Tex. App. –

Hous. [14th Dist.] 2004).   However, a corporation and its employees cannot conspire together

since they constitute a single "person" in that the acts of the corporation's agents are deemed to

be acts of the corporation itself.  *Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996); *Fojtik v. First*

*Nat'l Bank of Beeville*, 752 S.W.2d 669, 673 (Tex. App. – Corpus Christi 1988).   Because

Plaintiff alleges only a conspiracy among 7-Eleven and its employees, her conspiracy claim fails,

and Defendants are entitled to summary judgment on that claim.  *Id.*

### 5.      Defamation

Plaintiff's fifth claim is that 7-Eleven published defamatory statements about her when it

said that she alleged Selassie treated her unfairly because of the fighting going on in their home

country of Ethiopia, thereby accusing her of "tribal-based hate."  (Doc. 4, Exh. 48 at 7-8).

Plaintiff acknowledged in her deposition that the statement in question is from 7-Eleven's

position statement submitted to the EEOC in response to Plaintiff's charge of discrimination.

(Doc. 58-1 at 29, 30; Doc. 58-6 at 157-159).   Plaintiff also contended in her deposition that a

February 12, 2007, email from 7- Eleven field manager, Selette Bryant, to Adams contained

defamatory statements, namely that "if [Plaintiff] cannot work with [Selassie], it is your problem.

We cannot help it."  (Doc. 58-1 at 31).

As an initial matter, the only email in the record that Bryant sent to Adams on February

12, 2007 regarding Plaintiff does not contain the statement Plaintiff complains of and is therefore

not actionable.  (Doc. 58-6 at 4).  As to Defendants' second allegedly defamatory statement,

Defendants claim that their statements to the EEOC are privileged.  (Doc. 57 at 21-22).

In a federal civil action, the district court applies state privilege law to any supplemental

state claims.  FED.R.EVID. 501.  Under Texas evidentiary law, any statements made in the course

8

of judicial proceedings cannot serve as the basis of a civil action for defamation and are thus absolutely privileged.  *James v. Brown,* 637 S.W.2d 914, 916 (Tex. 1982).  The same privilege extends to quasi-judicial proceedings, including communications made in contemplation of or preliminary to such proceedings, which include proceedings conducted by government boards and commissions that have the authority to hear and decide matters or redress the grievances of which they take cognizance.  *5-State Helicopters, Inc. v. Cox,* 146 S.W.3d 254, 256 (Tex. App. – Ft. Worth 2004).  The rationale for the privilege is that "the administration of justice requires full disclosure from witnesses, unhampered by fear of retaliatory suits for defamation."  *Id.* Statements made to the EEOC in the course of an investigation thus are absolutely privileged. *Dick v. J.B. Hunt Transport, Inc.* 2011 WL 734285 *14 (N.D. Tex. Feb. 23, 2011); *Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc.*, 698 F.Supp.2d 730, 766 (S.D. Tex. 2010). Accordingly, Defendants' statements to the EEOC regarding Plaintiff are absolutely privileged and cannot serve as the basis for her defamation action.  Thus, Defendants are entitled to summary judgment on Plaintiff's defamation claim.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### 6.    Negligent Supervision and Retention

Plaintiff's next claim is that 7-Eleven knew or should have known about Selassie's and Adams's "proclivity for committing fraud" by engaging in document forgery, and are also liable for Bryant's numerous retaliatory acts against Plaintiff.  (Doc. 4, Exh. 48 at 8).

"[A]n employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others."

9

*Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App. – Ft. Worth 2002).  The

foreseeability determination hinges on whether sufficient evidence "exist[s] indicating that the

defendant knew or should have known of the employee's incompetence or potential for causing

harm."  *Zarzana v. Ashley*, 218 S.W.3d 152, 158 (Tex. App. – Houston [14th Dist.] 2007).

There is no evidence in the record to suggest that Adams, Selassie, or Bryant were

incompetent or unfit or that they caused any harm to Plaintiff.  The excerpts of Plaintiff's

deposition that appear in the record indicate, as explained in more detail above, that the

documents that Plaintiff presumably is alleging were forged, i.e., her timesheets, were modified

because of her repeated failure to follow proper procedures by clocking in and out.  Thus, her

allegations that 7-Eleven should be liable on a theory of negligent supervision and retention on

the basis that Selassie and Adams were incompetent or unfit in this regard fail.  *Morris*, 78

S.W.3d at 49.

Further, Plaintiff stated during her deposition that Bryant merely (1) told Plaintiff that she

could find another store to work in and to let Bryant know in a couple of weeks what store she

had decided on; and (2) called her to follow up when she had not heard from Plaintiff as to what

store she had chosen.  (Doc. 58-1 at 17-18).  Moreover, the deposition excerpts in the record do

not reflect any retaliatory action Bryant took against Plaintiff.  Accordingly, Plaintiff also has not

met her burden of showing that Bryant was unfit or incompetent such that 7-Eleven is liable for

negligent retention or supervision.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## 7.     Intentional Infliction of Emotional Distress

In her last claim, Plaintiff alleges that Defendants' fraud, defamation, and all of the other

actions listed in her complaint were conduct that was knowing and reckless and intentionally

caused her emotional distress.  (Doc. 4, Exh. 48 at 8-9; Doc. 58-1 at 33).

To establish a claim of intentional infliction of emotional distress in Texas, Plaintiff must show that Defendants acted intentionally or recklessly and that the conduct was extreme and outrageous.  *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999).  Moreover, a cause of action for intentional infliction of emotional distress is not available for ordinary workplace disputes; rather, an employee must prove the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct.  *Id.* at 613.  "Such extreme conduct exists only in the most unusual of circumstances."  *Id.*; *see, e.g.*, *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir. 1989) (holding that a supervisor's act of putting checks in an employee's purse to make it appear as though she was stealing and to make her fear criminal prosecution was extreme and outrageous). Finally, "[a] claim for intentional infliction of emotional distress cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort." *Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998).

Plaintiff's claim for intentional infliction of emotional distress fails for at least two reasons.  First, her claim arises out of her employment, and she has not proven the existence of any conduct that brings the dispute "outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct."  *GTE Southwest, Inc.*, 998 S.W.2d at 613. Second, Plaintiff testified that her intentional infliction claim is based on the other torts alleged in her complaint. (Doc. 58-1 at 33).  Thus, the alleged emotional distress was merely incidental to Defendants' other acts and cannot be separately maintained.  *Standard Fruit and Vegetable*, 985 S.W.2d at 68.  Accordingly, Defendants are entitled to summary judgment on this claim as

11

well.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### III.  CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court grant Defendants'

*Motion for Summary Judgment* (Doc. 56).

**SO RECOMMENDED** on June 20, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

12